UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TIMOTHY NOLL, individually and, on behalf of similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> FLOWERS FOODS INC, LEPAGE BAKERIES PARK STREET, LLC., and CK SALES CO., LLC, <br><br> Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:15-cv-00493-LEW |
| NICHOLAS AUCOIN, et al. <br><br> Plaintiffs, <br><br> v. <br><br> FLOWERS FOODS INC, LEPAGE BAKERIES PARK STREET, LLC., and CK SALES CO., LLC, <br><br> Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:20-cv-00410-LEW |
| MICHAEL BOWEN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FLOWERS FOODS INC, LEPAGE BAKERIES PARK STREET, LLC., and CK SALES CO., LLC, <br><br> Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:20-cv-00411-LEW |

**CORRECTED[1] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MOTION FOR <u>ATTORNEY'S FEES, EXPENSES AND SERVICE AWARD</u>**

---

[1] The Order is corrected in the Conclusion, and fixes a typographical error, by clarifying that the service award is payable to Plaintiff Timothy Noll rather than Objector John Landry. The Conclusion is also revised to specify the date for future action to effectuate the closure of these related cases.

The parties in the above-captioned matters have reached agreement to settle their three related cases. Now before the Court are a Joint Motion for Final Approval of Proposed Class Action Settlement (ECF No. 322), which motion is needed to settle the class claims presented in the *Noll* case, and Plaintiffs' Motion for Attorney's Fees, Expenses and Service Award (ECF No. 324), which motion also is needed in the *Noll* case, but bears the caption of the *Aucoin* and *Bowen* cases as well. A Fairness Hearing was conducted on April 1, 2022, attended by counsel as well as the solitary objector, John Landry. For reasons that follow, the motions are granted over Mr. Landry's objection.

## I. INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the parties have jointly moved for approval of the Class Action Settlement between Plaintiff, Timothy Noll, and Defendants, Flowers Foods, Inc., Lepage Bakeries Park Street LLC, and CK Sales Co., LLC (collectively, "Lepage" or "Defendants"). The parties have engaged in hard-fought, complex litigation for more than six years. After completing substantial factual and expert discovery, the parties briefed and argued two rounds of summary judgment motions, in which the Court both narrowed the number of viable legal theories and clarified the scope of recoverable wage deductions and the applicability of treble damages. In addition, the decertification of the FLSA collective in the *Noll* action spawned two more cases by approximately two-thirds of the former members of the Noll action, who reasserted their individual FLSA overtime claims against Lepage in the *Bowen* and *Aucoin* actions. On the eve of trial in the *Noll* action, and only after participating in multiple mediation sessions over the course of two years, the parties resolved the claims in the *Noll*, *Aucoin*, and *Bowen* actions.

The Settlement provides substantial monetary relief to the 119 Rule 23 class members, many of whom are also plaintiffs in the FLSA actions (collectively, "class members," "the class,"

or "Plaintiffs"), including $9 million in direct payments to the class. The Settlement also provides injunctive relief in the form of Lepage's agreement to repurchase the distribution rights of distributors and hire distributors as employees in the position of route sales representative. The repurchase of rights will require Defendants to contribute another approximately $6.6 million to the Settlement. Class members who become employees of Lepage will also realize future employment benefits such as health benefits and retirement benefits. In addition, Defendants have agreed to pay class counsel fees and costs in the amount of $7.5 million.

## II.  FACTUAL BACKGROUND

Defendant Flowers Foods is headquartered in Georgia and holds numerous wholly owned subsidiaries, including Defendants Lepage Bakeries Park Street, LLC ("Lepage") and CK Sales Co., LLC ("CK Sales"), that produce various baked goods, including packaged breads, rolls, and cakes. Since late 2013, Lepage contracts with independent distributors, including Maine distributors, like Plaintiffs. These distributors purchase distribution rights to sell and distribute products to customers in defined territories. Distributors enter into Distributor Agreements with Lepage whereby they are classified as independent contractors.

Plaintiffs argue that distributors should be classified as employees rather than independent contractors, and that this mischaracterization imposed several financial burdens on mischaracterized class members. Plaintiffs argue that distributors' job responsibilities and the reality of their relationship with Defendants supports a finding that they are employees under the Fair Labor Standards Act and Maine Wage Payment Laws. Due to their classification as independent contractors, distributors bear business-related expenses, such as administrative fees, warehouse fees, territory payments, truck payments or lease payments, and insurance payments. Also due to their classification as independent contractors, distributors were not paid overtime for more than forty hours of work in a workweek, nor were they afforded the benefits to which they

would have been entitled as employees. Plaintiffs accordingly sought to recover overtime wages under the FLSA and Maine law, as well as reimbursement of deductions under Maine law. Defendants have denied Plaintiffs' allegations, denied violating the law, and denied that Plaintiffs or class members are entitled to damages or other relief.

### III.  PROCEDURAL BACKGROUND

**A.     Litigation History**

Plaintiff Timothy Noll filed this action on December 3, 2015, against Defendants on behalf of himself and a class of current and former distributors, alleging violations of the FLSA, 29 U.S.C. § 201, et seq.; the Maine Independent Contractor Law, 26 Me. Rev. Stat. §§ 1043(11)(E) and 591-A; the Maine Employment Practices Laws, 26 Me. Rev. Stat. §§ 621 et seq. and 661 et seq.; and Maine common law. Each claim was premised on the allegation that Defendants improperly classified Maine distributors as independent contractors rather than employees and sought damages in the form of unpaid overtime for hours worked over forty in a week under the FLSA as well as unlawful deductions and unpaid overtime under Maine law. Plaintiff also sought a declaratory judgment pursuant to 28 U.S.C. § 2201 and 14 Me. Rev. Stat. §§ 591 et seq.

On January 20, 2017, this Court granted Plaintiff's motion for conditional certification of the federal overtime claims pursuant to § 216(b) of the FLSA. Order on Mot. for Cond'l Cert. and Court-Supervised Notice (ECF No. 81). The FLSA Collective Class was defined as "[a]ll persons who are or have performed work as distributors for Flowers Foods, Inc., LePage Bakeries Park Street LLC, and/or CK Sales Co., LLC in the state of Maine under a Distributor Agreement or a similar written contract that they entered into during the period commencing three years prior to the date of the filing of the Complaint in this case or December 3, 2012 and continuing through the close of the Court-determined opt-in period." *Id.* at 4.

Following conditional certification, the parties engaged in extensive discovery, recounted in more detail in their Joint Motion. I accept the parties' representations about the length and extent of their efforts in this regard. When discovery was complete, Plaintiffs moved for class certification of the Maine Wage Payment Law claims under Rule 23, and Defendants moved to decertify the FLSA collective action. The Court granted class certification and denied decertification in its Decision and Order of January 15, 2019 (ECF No. 202). Defendants petitioned the First Circuit for interlocutory review of the class certification decision on January 29, 2019. Plaintiffs opposed the petition and the First Circuit denied interlocutory review on April 3, 2019. *See Noll v. Flowers Foods*, Inc., No. 19-8001 (1st Cir.). The parties filed cross-motions for summary judgment on May 31, 2019. The parties argued the motions in December 2019. In its Summary Judgment Order dated January 29, 2020 (ECF No. 262), the Court denied Plaintiff's motion for summary judgment and granted Defendants' motion for summary judgment in part. The order dismissed class members' overtime claims under Maine law. The order also held the FLSA claims subject to the Motor Carrier Act exemption as modified by the Technical Corrections Act. Finding individualized issues as to whether FLSA opt-in Plaintiffs fell under the TCA, this Court also invited Defendants to file a renewed motion for decertification.

After briefing, the Court decertified the FLSA collective action through an August 3, 2020 Order on Defendants' Motion for Decertification (ECF No. 277). To preserve the overtime claims following the decertification order, class counsel reached out to the FLSA collective members, entered individual representation agreements with them, and collected information necessary to file their individual claims in two lawsuits. Approximately two-thirds of the opt-in FLSA Plaintiffs proceeded with individual FLSA overtime claims, litigated through two separate cases filed on November 3, 2020. *See Aucoin v. Flowers Foods, Inc.*, No. 1:20-cv-00411 (D. Me.); *Bowen v. Flowers Foods, Inc.*, No. 1:20-cv-00410 (D. Me.). The parties exchanged supplemental discovery

in the cases and started working on anticipated summary judgment motions.

The parties also continued litigating the original case, now comprising class members' illegal wage deduction claim under Maine wage laws. Defendants filed another summary judgment motion on October 30, 2020, arguing that class members could not recover treble damages or other specified categories of damages, even if Plaintiffs prevailed on the underlying misclassification claim. Plaintiffs opposed that motion. In a Decision and Order dated March 9, 2021 (ECF No. 307), the Court held that significant categories of damages—specifically, deductions for territory fees and truck fees—could be tripled if Plaintiffs had, in fact, been misclassified.

**B.     Settlement Negotiations**

The parties first attempted to resolve this case in May 2019 with the assistance of a professional mediator. The parties aver that the mediation sessions were lengthy and many. The parties had a final mediation in late July 2021 but given the complexity of the non-monetary relief, did not finalize the terms of a class action settlement until October 2021.

The Settlement Class covers all individuals who operated under a Distributor Agreement with Defendants Lepage Bakeries or CK Sales from December 2, 2012, and it encompasses both class members with claims under Maine wage laws and FLSA Plaintiffs with claims in the *Bowen* and *Aucoin* matters.

On October 21, 2021, the Parties filed a Joint Motion for Preliminary Approval of the Settlement, which motion was granted in an Order Approving Amended Joint Motion for Preliminary Approval of Proposed Class Action (ECF No. 319).

**C.     Settlement Agreement**

The Settlement Agreement provides substantial monetary and non-monetary relief to Plaintiff Noll, the Rule 23 class members, and the FLSA Plaintiffs. Specifically, the settlement fund is available to any individual who, either individually or on behalf of a corporation or business

entity, either: (1) operated under a Distributor Agreement with CK Sales/Lepage during the Covered Period in the State of Maine;[2] (2) is a *Bowen* or *Aucoin* Plaintiff (also referred to as "FLSA Plaintiffs")[3]; or (3) is Named Plaintiff Timothy Noll.

### *1. Settlement payments to all class members*

The Settlement Agreement provides significant monetary relief to participating settlement class members. Defendants have agreed to create a non-reversionary settlement fund of up to $9 million, which provides (1) payments to settlement class members; and (2) a service award to Plaintiff Noll in the amount of $10,000. Class counsel estimates that class members' mean recovery will be approximately $75,500, with a median recovery of approximately $56,600. The payments will be automatic, and no class member will be required to submit an additional claim form to receive a share of the settlement fund.

The $9 million settlement fund is allocated among the class members, first, in proportion to their overtime claims, measured in proportion to the gross sales of each class member's territory (or highest grossing territory for those who have more than one territory), using a calculation that considers the number of weeks worked during the two-year statute of limitation period and assuming an average of 55 hours worked. Next, each class member is allocated a refund of amounts paid in warehouse fees, territory payments, administrative fees, shrink, and stale payments within the same period. Finally, the balance of the fund is apportioned pro rata for wage deduction

---

[2] The covered period is defined generally in the Settlement Agreement as December 2, 2012, through the date of preliminary approval, however, the period will be calculated on an individual basis for each settlement class member, using the dates each individual was a distributor and any other relevant information.

[3] The FLSA Plaintiffs are: Michael Bowen, Michael A. Campbell, Jeffrey Clark, Clifford Cyr, Michael Deschenes, Ernest Dore, Jeffrey Gagne, David Googins, Thomas Herrin, Paul Roy, James Snow, Stephen M. Temm, Richard Veilleux, Nicholas Aucoin, Michael Barlow, Normand Belanger, Jason Britton, Allen Burns, Peter Carr, Daniel Cofone, Denis Crepeau, Richard Curran, Edward Henningsen, Jr., Paul Masse, Michael Mendes, Jeffrey Smith, Roger Swedberg, and Gary White.

damages, in proportion to each class member's actual wage deductions.

### *2. Route buybacks and offers of employment for current distributors*

In addition to the settlement payments for all class members, the Parties have agreed to additional injunctive relief as part of the Settlement pursuant to Rule 23(b)(2), which will apply to all current distributors in Maine whether they exclude themselves from the Settlement or not and will provide significant additional monetary and non-monetary benefits for these individuals. Specifically, the parties have agreed that within six months of the final approval of the Settlement, Defendants will terminate all Distributor Agreements with Maine distributors, and repurchase the distribution rights covered by such Distributor Agreements for the sum of ten (10) times the average weekly branded sales calculated over a 52-week period preceding the date of repurchase and will pay this sum net of the balance of any outstanding territory notes issued by FLOFIN.[4] The cost of repurchasing the distribution rights in Maine is approximately $6.6 million, which is a direct monetary benefit to current distributors.

All current distributors will then have the opportunity to work for Lepage as employees in the position of Route Sales Representatives if they otherwise qualify for employment and are interested in becoming employees. As employees, they will be eligible for employment benefits consistent with the benefits that Lepage provides to its employees, as well as the rights and protections of employment status under state law. If a certain number of current distributors indicate they are not interested in working for Lepage, the parties will develop an extended schedule for termination of the Distributor Agreements.

### IV. NOTICE PLAN

Rule 23 provides that in the event of a class action settlement, the court must direct "the

---

[4] If the Distributor's territory value is less than an outstanding FLOFIN note, Lepage will not seek repayment of this deficit.

best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The rule further requires that the notice state, in plain and concise language, the nature of the action, the class definition, the class claims and defenses, class members' right to appear, object, or opt out, and the binding impact of the proposed settlement and release.

On November 30, 2021, the Court granted preliminary approval of the Settlement, approved the Parties' notice plan, and appointed Atticus Administration as the Settlement Administrator.

On or about December 14, 2021, Atticus sent court-approved notices directly to the designated class members. Decl. of Christopher Longley ¶ 6 (ECF No. 325). After the notices were mailed, twelve were returned as undeliverable and one was sent back with a forwarding address. *Id.* ¶ 7. After skip tracing, all thirteen were successfully re-sent to the correct addresses. *Id.* In addition, reminders went out to the class members who had not submitted an Employment Showing of Interest form. *Id.* ¶ 8.

As of the date of the Fairness Hearing, no class member asked to opt-out of the Settlement and only one objected. *Id.* ¶ 9. Only six class members have indicated that they do not want to stay on as employees of Lepage. *Id.* ¶¶ 10-11.

The notice plan provided for the best practicable notice under the circumstances, and it was reasonably calculated to reach substantially all class members. The notice also provided a clear, concise, and plain summary of the class claims, the defenses, and class members' rights. As a result, the notice plan complied with Rule 23(c)(2)(B) and 23(e)(1)(B). In accordance with the Class Action Fairness Act, Atticus also provided due notice to state and federal officials for purposes of 28 U.S.C. § 1715(b). *Id.* ¶ 4. I find that class members received adequate notice under the notice plan and may accordingly proceed to final approval.

## V.  FINAL APPROVAL

In accordance with Rule 23(e)(2), the Court may approve a settlement that is fair, reasonable, and adequate. In general, a district court will presume that a settlement is reasonable if the parties negotiated at arm's length and conducted sufficient discovery. *See In re Pharm. Indus. Avg. Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009). A district court enjoys considerable discretion in approving a class action settlement, given the generality of the standard and the need to balance a settlement's benefits and costs. *Id*. at 33. The court's role in reviewing a proposed settlement agreement is effectively that of a fiduciary for the class members, *see Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015), a duty which obtains "[w]hether or not there are objectors or opponents to the proposed settlement," Manual for Complex Litigation, Fourth, § 21.61 at 310. However, a court does not have the power to modify the Settlement Agreement or otherwise "require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986). Rather, if it concludes that the Settlement Agreement is unfair, the appropriate response is to reject the agreement and send the parties back to the negotiating table. *See* Fed. R. Civ. P. 23(e)(2).

Rule 23(e)(2) prescribes specific factors for evaluating whether a class action settlement is fair and reasonable. Rule 23(e)(2) was amended in 2018 to formalize these factors and supplant the "sheer number of factors" that had developed under the case law and return the focus to "a shorter list of core concerns." *See* Fed. R. Civ. P. 23, Advisory Committee Note (2018). Although this District had developed its own set of factors prior to the 2018 amendment of the Federal Rules of Civil Procedure, I rely entirely on the factors outlined in the Rule. As a result, I look to whether:

    (A) the class representatives and class counsel have adequately represented the class;
    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:

  (i) the costs, risks, and delay of trial and appeal;

  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

  (iv) any agreement required to be identified under Rule 23(e)(3); and

 (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). I will address each factor in turn.

**A. Class Counsel and Plaintiff Adequately Represented the Class.**

Adequacy of representation under Rule 23(e)(2)(A) largely overlaps with the adequacy requirement under Rule 23(a)(4). On January 15, 2019, I found that class counsel and Plaintiff are adequate representatives of the class and there were no conflicts of interest that undermined adequacy. I also found that class counsel are "qualified, experienced, and able to pursue the interest of the class in this litigation." Decision and Order at 4-5 (ECF No. 202).

Since the Class Certification Order, class counsel has continued to demonstrate the adequacy of their representation through vigorous prosecution of this case, which included voluminous discovery and depositions; complex motion practice including class certification proceedings and a petition for interlocutory appeal; and expert analysis to calculate class members' damages. Plaintiff Noll, likewise, demonstrated adequate representation by fully participating in the case, providing his knowledge and understanding of the facts, assisting with the investigation, and responding to discovery.

**B. The Proposal Was Negotiated at Arm's Length.**

Rule 23(e)(2)(B) examines whether the Settlement was negotiated at arms' length. Here, there is no reason to suspect collusion that would undermine the Settlement's fairness, and strong indicators to the contrary. For one, the parties arrived at the Settlement after nearly two years of repeated mediation sessions, and only after the Court clarified and narrowed the scope of this case

through rulings on two sets of summary judgment motions. Additionally, the Settlement agreement affords significant relief to the class. And while there is an intuitive sense of impropriety in the fact that class counsel negotiated the attorney fee alongside the Settlement on behalf of the class, simultaneous negotiation of settlement and fees is not in itself evidence of collusion. *See Evans v. Jeff D.*, 475 U.S. 717, 728 (1986). Here, the overall picture is one of fair, arm's-length negotiations.

**C.    The Relief Provided for the Class Is Adequate.**

Rule 23(e)(2)(C)(i) examines the costs, risks, and delay of trial and appeal. Here, the amount of monetary recovery combined with the significance of the injunctive relief, which will provide many class members with employee benefits, supports final approval of the Settlement, particularly when compared to the costs, risks, and delay associated with continuing to litigate not only this case, but the *Bowen* and *Aucoin* cases as well.

At present, only the unlawful deductions claims remain in the *Noll* case, which case is the impetus behind court approval of the Settlement. Those claims would require Plaintiffs to demonstrate that they were misclassified as independent contractors, based on a multi-factor standard that is uncertain in application on the facts of the case. In all likelihood, no relief would be achieved without an appeal. Thus, both sides face significant risks and costs moving forward and have a strong interest in avoiding the uncertainty and delay of further litigation. The Settlement reflects a fair compromise of the claims involved, considering these risks. The Settlement also provides an effective means of distributing relief to the class and includes a reasonable attorney fee award proposal.

**D.    The Settlement Treats Class Members Fairly.**

The final Rule 23(e) factor requires the Court to consider whether "the proposed settlement treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), meaning that relief is apportioned between class members in a way that "takes appropriate account of differences

among their claims," Fed. R. Civ. P. 23, Advisory Committee Note (2018). The payment to each class member is directly linked and tailored to his or her claims in this litigation. Each share is calculated individually from the transactional data of each class member's distributorship. Each class member's relief for any unlawfully deductions is calculated based on concrete deductions data and on a pro rata basis relative to actual deductions. And although the FLSA Plaintiffs' damages will tend to be greater because they chose to pursue recovery of overtime pay through the *Aucoin* and *Bowen* cases, the Settlement fairly apportions payment among class members based on objective criteria.

### E.  John Landry's Objection

Class member John Landry has voiced three objections to the terms of the proposed settlement.

One of Mr. Landry's objections concerns his decision to secure private financing to purchase his territorial rights. Once he did so, Defendants no longer made deductions for his territory payments. According to Mr. Landry, there are perhaps four other class members in the same boat. As a consequence, Mr. Landry does not stand to realize as significant a recovery on his unlawful deductions claim, because of the way counsel have compromised the class claim. I appreciate that Mr. Landry is frustrated by this mechanic of the settlement plan and by the fact that his financial savvy may have worked to his disadvantage in this instance, though Mr. Landry's motion does not provide an accounting of the actual impact on his finances. However, I am not persuaded that the Settlement should be rejected on this ground.

Mr. Landry also objects to a provision in the Distributorship Agreements stating that distributors will pay to Flowers a transfer fee if a territory is transferred. As proposed, the transfer fee is not negated under the terms of the Settlement, and will be honored in the form of a deduction against what Defendants must pay to Plaintiffs to buy back the territories. This issue was discussed

13

in settlement negotiation and considered by class counsel. I find it to be a reasonable tradeoff that is likely to achieve a fair result.

Lastly, Mr. Landry objects to the fact that he will have to bear certain expenses due to the Settlement. Specifically, Mr. Landry observes that there is no reason to maintain his distributorship as a corporation once the territory is returned to Defendants but dissolving his corporation will generate costs. This attribute of the settlement proposal appears to impact every Plaintiff. In the end, I feel that the Settlement Agreement's failure to account for this economic harm is inherent in the fact that the agreement is a compromise reached in the shadow of litigation. The fact that no class member has opted out is further reassurance that class members do not perceive the overall settlement package to be a raw deal. Nor has any class member attempted to quantify a measure of economic harm that would give me pause. For these reasons, while I respect Mr. Landry's attention to detail and outspokenness, I am not persuaded that I should forestall final approval of the proposed settlement to require a more precise accounting.

## VI. ATTORNEY'S FEES, COSTS, AND SERVICE AWARD

As with the overarching settlement proposal, it falls to the Court to ensure that awards of attorney's fees, expenses, and named-plaintiff's service bonus are fair and reasonable.

**A.     Attorney's Fees and Costs**

Rule 23 authorizes the court, when approving a class action settlement agreement, to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). It falls to the court to ensure that any award of attorney's fee is fair. On the one hand, a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Thus where, as here, parties "settle the amount of a fee" in an apparently fair negotiation, the reviewing court need not sift through the agreement with a fine-toothed comb. *Id.* On the other hand, because a "defendant who has agreed to settle for

a total sum has no interest in how the common fund is divided between counsel and the class . . . the usual adversary system does not operate to expose possible misrepresentations by counsel for the class to the court." *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 208 (D. Mass. 2020). Due to these "potential conflicts of interests between class counsel and class members, district judges are expected to give careful scrutiny to the terms of the proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 (1st Cir. 2009) (citations omitted).

The First Circuit recognizes two general methods for awarding fees in class actions: the "percentage of fund" method, under which class counsel is awarded a fee equal to a "reasonable percentage of the fund recovered for those benefitted by the litigation," and the "lodestar" method, under which the fee awarded to class counsel is calculated based on the amount that the attorneys could have billed the class for their time. *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995). Here, the parties used the percentage of fund method, the prevailing approach in common fund cases like this one. *O'Connor v. Oakhurst Dairy*, No. 2:14-cv-00192-NT, 2018 WL 3041388, at *4 (D. Me. June 19, 2018) (citing *In re Thirteen Appeals*, 56 F.3d at 307).

As part of the Settlement Agreement, Defendant agreed to pay Plaintiffs' counsel $7,500,000 in attorney's fees and costs, which Plaintiffs' counsel now asks that I approve. The request is the result of negotiations between Plaintiffs' counsel and Defendant, which negotiations appear to have taken place concurrently with, and as a part of, the overall settlement negotiation. The request represents approximately 32 percent of the overall cash value of the Settlement Agreement, though, if one were to include the prospective value of future employment benefits in the calculus, this share would be lower. The proposed award represents approximately 2.2 times

15

the calculated lodestar of $3,260,626.85 based on the value of services rendered to the class, which class counsel argue is reasonable given the risk inherent in taking a case such as this one.

Upon review of the Settlement Agreement and the parties' motions, I conclude that this fee is reasonable. Plaintiffs' counsel has successfully litigated nearly identical cases in other states, advancing the exact same theory against the exact same defendant. Despite this experience and familiarity with Flowers Foods business model, Plaintiffs' counsel had to endure a long battle in this District rather than a minor skirmish. As outlined in the Procedural Background section, class counsel worked hard to achieve the Settlement, after reaching the trial phase of litigation with surviving claims that exposed Defendants to significant, though not certain, legal liability. Given the protracted nature of this litigation and the quality of counsel's representation, the agreed upon measure of attorneys' fees is fair and reasonable.

**B.     Service and Incentive Payment**

Class counsel has proposed, and neither the Defendants nor any class members have objected to, payment of a service bonus to named plaintiff Timothy Noll in the amount of $10,000. "Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain." *Lauture v. A.C. Moore Arts & Crafts*, *Inc*., No. 17-CV-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017). According to class counsel's unopposed motion, Mr. Noll spent considerable time and effort communicating regularly with counsel, providing critical assistance, participating in discovery, sitting for deposition, contributing to the negotiations, and advocating for the class. The proposed service incentive award is fair and appropriate given Mr. Noll's contributions to the litigation effort.

## VII.  CLASS ACTION FAIRNESS ACT

Under the Class Action Fairness Act ("CAFA"), no later than 10 days after a proposed settlement of a class action is filed in court, the defendant is required to serve notice of the proposed settlement with the appropriate federal and state officials. *See* 28 U.S.C. § 1715(b). A court may not finally approve a settlement until 90 days after the delivery of such notice. *See* 28 U.S.C. § 1715(d).

Defense counsel notified the United States Attorney General and the Attorney General of the State of Maine of the terms of the proposed class action settlement by letter dated October 29, 2021, with enclosures (ECF No. 325-1). *See also* Decl. of Christopher Longley ¶ 4. Neither official has filed an objection to the proposed settlement. Final approval is, therefore, appropriate at this time because more than 90 days have passed since defense counsel sent notice to the federal and state officials.

## VIII.  CONCLUSION

For the foregoing reasons, the Joint Motion for Final Approval of Proposed Class Action Settlement (ECF No. 322) and Plaintiffs' Motion for Attorney's Fees, Expenses and Service Awards (ECF No. 324) are GRANTED. The Class Action Settlement is APPROVED, including the agreed award of attorneys' fees and costs and Mr. Noll's service award.

Subject to a reasonable request for extension, the parties will file, on or before May 26, 2022, a stipulation of dismissal with prejudice and/or an appropriate motion to effectuate the closure of these related cases.

**SO ORDERED.**

Dated this 3rd day of May, 2022.

/s/ Lance E. Walker
UNITED STATES DISTRICT JUDGE